# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
|  | Case No. 13-11761 (BLS) |
| **AgFeed USA, LLC, et al,**[1] | |
|  | Jointly Administered |
| Debtors. | |
| **JLL CONSULTANTS, INC., AS TRUSTEE OF THE AGFEED LIQUIDATING TRUST** | Adv. No. 15-50210 (BLS) |
| Plaintiff, | |
| v. | |
| **K. IVAN F. GOTHNER,** | |
| Defendant. | |

---

[1] The Debtors and the last four digits of their federal tax identification numbers are:  AgFeed USA, LLC (8748), AgFeed Industries, Inc. (7168); TS Finishing, LLC (8748); New York Finishing, LLC (8748); Pork Technologies, LC (2076); New Colony Farms, LLC (9246); Heritage Farms, LLC (8141); Heritage Land, LLC (8129); Genetics Operating, LLC (1921); M2P2 Facilities, LLC (8748); MGM, LLC (8748); M2P2 General Operations, LLC (8748); New Colony Land Company, LLC (5834); M2P2 AF JV, LLC (8748); Midwest Finishing, LLC (8748); and Genetic Land, LLC (1921).

ELLIOTT GREENLEAF
Eric M. Sutty
Bar No.  4007
Rafael X. Zahralddin-Aravena
Bar No. 4166
1105 North Market Street
Suite 1700
Wilmington, DE 19801

--and—

SUGAR FELSENTHAL
GRAIS & HAMMER LLP
Aaron L. Hammer
Mark Melickian
Leland H. Chait
30 N. LaSalle St., Ste. 3000
Chicago, IL 60602

*Counsel to JLL Consultants,*
*Inc., as Liquidating Trustee of*
*the AgFeed Liquidating Trust*

ASHBY & GEDDES, P.A.
William P. Bowden
Bar No.  2553
Andrew D. Cordo
Bar No.  4534
Stacy L. Newman
Bar No.  5044
F. Troupe Mickler IV
Bar No.  5361
500 Delaware Avenue, 8th
Floor
Wilmington, DE 19801

*Counsel for Defendant K.*
*Ivan F. Gothner*

# OPINION

Before the Court is Defendant K. Ivan F. Gothner's ("Gothner")

Motion to Dismiss the Second Amended Complaint (the "Motion")

[Adv. Docket No. 36] filed by JLL Consultants, Inc. ("JLL") as trustee

for the AgFeed Liquidating Trust.  JLL initiated this adversary

proceeding against Gothner alleging that, during his time as a director,

Chair of the Audit Committee, Vice-Chairman and Chairman of the

Board of AgFeed Industries, Inc. ("AgFeed"), Gothner (i) breached

fiduciary duties; (ii) participated in a series of fraudulent transfers; and

(iii) committed intentional misrepresentations by nondisclosure.   By

the Motion, Gothner has moved to dismiss the complaint pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable

to adversary proceedings by Federal Rule of Bankruptcy Procedure

7012.  For the following reasons, the Court will grant the Motion in

part, and deny the Motion in part.

## I.  JURISDICTION AND VENUE

The Court has jurisdiction over these matters pursuant to 28

U.S.C. §§ 1334 and 157(a) and (b)(1).  Venue is proper in this Court

pursuant to 28 U.S.C. § 1409.  The Court has the power to enter an

order on this Motion to dismiss even if the matter is non-core or it has

no authority to enter a final order.  See, e.g., In re Nat'l Serv. Indus., Inc., No. AP 14-50377 (MFW), 2015 WL 3827003, at *2 (Bankr. D. Del. June 19, 2015) ("Even if the matter is non-core or the Court lacks authority to enter a final order, however, the Court has the power to enter an order on a motion to dismiss.") (citations omitted); In re Tropicana Entm't, LLC, 520 B.R. 455, 463 (Bankr. D. Del. 2014).

## II.  BACKGROUND

The Court presumes familiarity with the general background of this case, as it is set forth in a previous published opinion.  See JLL Consultants, Inc. v. Gothner (In re AgFeed USA, LLC), 546 B.R. 318 (Bankr. D. Del. 2016).

On July 15, 2013 (the "Petition Date"), Agfeed USA, LLC and fifteen of its affiliates (the "Debtors") filed for relief under chapter 11 of the Bankruptcy Code.  Following a successful sale process, the Debtors' Revised Second Amended Chapter 11 Plan (the "Plan") was confirmed on November 4, 2014.  Upon the effective date, the Liquidating Trust was created for the purpose of pursuing claims and causes of action, litigating contested claims and interests and ultimately making final distributions to holders of equity interests in the Debtors.  JLL was appointed to serve as Liquidating Trustee (the "Trustee").

On February 23, 2015, the Trustee filed the original complaint (the "Original Complaint") alleging twelve causes of action against Gothner for conduct alleged to have occurred during his time as an officer and director of the Debtors.  Gothner promptly moved to dismiss that complaint under Fed. R. Civ. P. 12(b)(6).  On February 19, 2016, the Court issued a memorandum opinion and order dismissing the majority of the counts in the Original Complaint without prejudice. See Gothner, 546 B.R. 318.  The Court granted the Trustee leave to file an amended complaint.

On May 27, 2016, the Trustee timely filed the second amended complaint (hereinafter the "Amended Complaint") alleging the following ten counts against Gothner:  (I) Breach of Fiduciary Duty (Duty of Care); (II) Breach of Fiduciary Duty (Duty of Loyalty); (III) – (V) Fraudulent Transfers; (VI) Recovery of Avoidable Transfers (11 U.S.C. § 550); (VII) Disallowance of Claims ( 11 U.S.C. § 502(d)); (VIII) Recoupment; (IX) Setoff; and (X) Intentional Misrepresentation.[2] Counts (I) – (V) relate to counts previously dismissed by this Court.  As a result, with regard to these Counts, the Court will primarily focus on new allegations made in the Amended Complaint (if any) to determine

---

[2] The Trustee filed the First Amended Complaint on April 13, 2016, in order to comply with the Court's previous order.  The Trustee subsequently amended the First Amended Complaint, by filing the Second Amended Complaint.  The Court will refer to the Second Amended Complaint as the "Amended Complaint."

whether the Trustee has now alleged sufficient facts to survive the

Motion.    Counts (VIII) – (X) were not alleged in the Original

Complaint.

### III.  STANDARD OF REVIEW

To decide a motion to dismiss under Rule 12(b)(6), the Court

must "accept all well-pleaded allegations in the complaint as true, and

view them in the light most favorable to the plaintiff." Carino v. Stefan,

376 F.3d 156, 159 (3d Cir. 2004); see also Phillips v. County of

Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (stating that the Supreme

Court has reaffirmed that, on a Rule 12(b)(6) motion, the facts alleged

must be taken as true and a complaint may not be dismissed merely

because it appears unlikely that the plaintiff can prove those facts or

will ultimately prevail on the merits").  In addition, all reasonable

inferences are drawn in favor of the plaintiff.  Kost v. Kozakiewicz, 1

F.3d 176, 183 (3d Cir. 1993).  Legal conclusions, however, are not

entitled to a presumption of truth.  Ashcroft v. Iqbal, 556 U.S. 662, 129

S.Ct. 1937, 1946, 173 L.Ed.2d 868 (2009).  Federal Rule of Civil

Procedure 8(a)(2) "requires a 'showing' rather than a blanket assertion

of an entitlement to relief ... [because] without some factual allegation

in the complaint, a claimant cannot satisfy the requirement that he or

she provide not only 'fair notice,' but also the 'grounds' on which the

6

claim rests." Phillips, 515 F.3d at 232 (citing Bell Atl. Corp. v. Twombly,

550 U.S. 544, 556 at n. 3, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The Trustee has alleged actual fraud in several Counts, which

must meet the elevated pleading standard of Federal Rule of Civil

Procedure 9(b).  Rule 9(b), made applicable here by Federal Rule of

Bankruptcy Procedure 7009, states:

> In alleging fraud or mistake, a party *must state with
> particularity the circumstances constituting fraud* or mistake.
> Malice, intent, knowledge, and other conditions of a
> person's mind may be alleged generally.

Fed. R. Civ. P. 9(b) (emphasis added).  The Third Circuit has explained

that the purpose of Rule 9(b)'s requirement that plaintiffs particularly

plead the "circumstances" of the alleged fraud is to "place the

defendants on notice of the precise misconduct with which they are

charged, and to safeguard defendants against spurious charges of

immoral and fraudulent behavior."  Seville Indus. Machinery Corp. v.

Southmost Machinery Corp., 742 F.2d 786, 791 (3d Cir. 1984), cert.

denied, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985).  It is not a

defendant's fraudulent intent that must be pled with particularity, but

the circumstances constituting fraud.  The Third Circuit has indicated

that, "allegations of 'date, place or time' fulfill these functions, but

nothing in the rule requires them.  Plaintiffs are free to use alternative

means of injecting precision and some measure of substantiation into

their allegation of fraud." Seville Indus., 742 F.2d at 791.

## IV.  DISCUSSION

All parties have agreed that (i) Nevada law governs Counts I

and II.[3]  The Court will address each count in turn.

### (I) Breach of Fiduciary Duty (Duty of Care)

Count I alleges that Gothner breached his fiduciary duty of care.

The Amended Complaint alleges to theories as to why Gothner

breached his fiduciary duty of care.  First, Gothner breached his

fiduciary duty of care by causing AFI to fail to fully disclose accurate

information related to the accounting fraud in China before September

2011.  Second, Gothner breached his fiduciary duty of care by "failing

to properly supervise and monitor the adequacy of AgFeed's internal

controls . . . ."[4]

---

[3] Nevada's corporate law is modeled largely after Delaware's corporate law.  See Cohen v. Mirage Resort, Inc., 62 P.3d 720, 726-27 & n. 10 (Nev. 2003).  As such, when there is no Nevada law on a particular point, Nevada courts look to decisions of Delaware courts, or decisions applying Delaware law, for guidance.  Hilton Hotels Corp. v. ITT Corp., 978 F. Supp. 1342, 146 (D. Nev. 1997); Hamilton P'rs, L.P. v. Highland Cap. Mgmt., L.P., 2014 WL 1813340, at *18 & n. 158.  Thus, the Court will do the same.

[4] "Failing to properly supervise and monitor the adequacy of a company's internal controls," is colloquially known as a Caremark claim.  See Stone v. Ritter, 911 A.2d 362, 370 (Del. 2006) (discussing the elements of a Caremark claim).  The Trustee in the Original Complaint, and now the Amended Complaint, refers to these allegations as a Caremark claim.  Throughout the pleadings, in both the Original Complaint and the Amended Complaint, the Trustee has classified this Caremark claim as a breach of the duty of care and has emphasized that the Plaintiff is proceeding solely under a duty of care claim.  However, research reveals (and the Defendant has pointed out) that a Caremark claim is a claim arising under the duty of loyalty, not the duty of care.  Id. ("Where directors fail to act in the face of a known duty to act,

*(i) Causing AFI to Fail to Fully Disclose Accurate Information Related to the Accounting Fraud in China Before September 2011*

The Amended Complaint alleges that Gothner breached his fiduciary duties because the Company made false or misleading public statements in public filings and press releases that were not seeking stockholder action.  <u>See</u> Answer at 11-12 ("These false and misleading statements also constitute breaches of fiduciary duty by Mr. Gothner. . . . Directors who knowingly disseminate false information that results in corporate injury or damage to an individual stockholder violate their fiduciary duty, and may be held accountable . . . .").[5]  A director may be liable for breach of fiduciary duty if he "knowingly" or "deliberately" disseminates false information.  <u>Malone v. Brincat</u>, 722 A.2d 5,10 (Del. 1998)).  The required "level of proof is similar to, but even more

---

thereby demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith.").  Despite this error by the Trustee, in the interest of thoroughness, the Court will construe the Amended Complaint in the light most favorable to the Plaintiff and will assume that the Trustee intended to allege this *Caremark* claim under the duty of loyalty.  The Court notes that the Defendant argues that the Court should dismiss the *Caremark* claim because the Trustee abandoned the claim when they assured the Court that they were proceeding solely under a theory of a breach of the duty of care.  Because the Trustee has failed to allege facts sufficient to support a *Caremark* claim, the Court does not address whether the Trustee abandoned this cause of action.

[5] As with the Trustee's *Caremark* claim, the Trustee labels this claim as a breach of the duty of care.  However, a claim against "directors who knowingly disseminate false information that results in corporate injury or damage," actually arises under the duty of loyalty.  <u>See</u> <u>Metro Commc'n Corp. BVI v. Advanced Mobile Comm Techs. Inc.</u>, 854 A.2d 121, 148 (Del. Ch. 2004) ("In *Malone*, the Supreme Court said that state law did recognize [a claim against corporate directors for issuing misleading disclosures to stockholders when those disclosures were not seeking stockholder action], describing it not as a claim for the breach of the so-called fiduciary duty of disclosure but as a species of the fiduciary duty of loyalty.").  Despite this error by the Trustee, in the interest of thoroughness, the Court again construes the Amended Complaint in the light most favorable to the Plaintiff and will assume that the Trustee intended to allege this *Malone*-type claim under the duty of loyalty.

stringent than, the level of scienter required for common law fraud."

Metro Commc'n, 854 A.2d at 158.  Thus, the Trustee must plead that

Gothner (i) had actual knowledge of the falsity of the Company's

statements (ii) that he allegedly made and (iii) acted with scienter in

making the statements.

Here, the Amended Complaint does not allege any of the three

components.  The Complaint does not allege that Gothner made any of

the statements at issue.  It instead says that the Audit Committee

"revised and approved" the disclosures in question.  See Am. Compl. at

¶ 203; see also id. at ¶ 191 (alleging that management, of which Gothner

was not a member at the time, made "overly optimistic" projections in a

presentation in 2011).  These allegations say nothing about Gothner's

actual role in the preparation of the disclosures at issue.  Nor do the

allegations discuss his state of mind when they were made.  This is

insufficient to show that Gothner made any of the statements in

question or that he acted with scienter.  See, e.g., Wood v. Baum, 953

A.2d 136, 142 (Del. 2008) (holding that an allegation that board

members executed annual reports and other financial reports

containing false information, without more, is insufficient to create an

inference that the directors "knowingly" engaged in wrongful conduct,

or that the defendants knew that such conduct was wrongful); see also

In re China Auto. Sys. Inc. Deriv. Litig., 2013 WL 4672059, at *8 (Del. Ch. Aug. 30, 2013) ("[T]he Complaint does not allege with particularity any direct or personal involvement by the Defendants in the Company's preparation of its financial statements, in the Board's or Audit Committee's review of [the auditor]'s auditing of the financial statements, or in any other capacity by which the Court could reasonably infer that a majority of the Defendants had any knowledge that their actions or inactions were harmful to the corporation or a breach of their fiduciary duties. Mere membership on the Audit Committee is not enough for the Court to infer bad faith.") (footnotes omitted). Furthermore, the Amended Complaint fails to even allege that Gothner actually knew that the disclosures were false at the time they were made. See Am. Compl. at ¶ 18 (alleging generally that Gothner "knew or should have known" that the information being disclosed was "untrustworthy" or "misleading"). This vague pleading is insufficient to support a claim for breach of fiduciary duty. See MetroCommc'n, 854 A.2d at 131, 144 ("Malone is merely a context-specific application of traditional common law fraud principles . . . the absence of knowledge is also fatal. . . . To say Defendant knew or should have known is not adequate.") (internal quotation marks and

brackets omitted).  Accordingly, the Count II of the Amended Complaint fails to state a claim for breach of fiduciary duty.

*(iv) Caremark Claim*

The Amended Complaint alleges that Gothner violated his fiduciary duties "by failing to properly supervise and monitor the adequacy of AgFeed's internal controls . . . ."  See Am. Compl. at ¶ 250; Opposition at 7.  The Amended Complaint alleges that "by the time that Gothner joined the Board and assumed control of the Audit Committee, Gothner already had 'actual, not hypothetical, knowledge' of issues related to AgFeed's outside accountants and auditors in 2009 and of Audit Committee member Rittereiser's desire to remove those professionals."  Opposition at 7; see also Am. Compl. at ¶ 93, 101, 103. The Amended Complaint alleges that based on this knowledge, and other "red flags concerning the accounting," Gothner was required to take timely affirmative actions including, but not limited to, conducting a meaningful forensic investigation of known problems and putting adequate procedures in place on the ground in China.  Opposition at 8. Based on the red flags outlined at paragraphs 93 through 124 of the Amended Complaint and the factual findings of the McClelland Report, the Trustee contends that a reasonable inference can be drawn to support a *Caremark* claim.  Opposition at 8.

A *Caremark* claim is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." In re Caremark Int'l Inc. Derivative Litig., 698 A.2d 959, 967 (Del. Ch. 1996).  In order to state such a claim, a plaintiff must allege that:

> (a) the directors utterly failed to implement any reporting or information system or controls; or (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention.

Stone v. Ritter, 911 A.2d 362, 370 (Del. 2006).  The dispositive question is whether the directors "utterly failed to attempt" to satisfy their duties, not whether their efforts were "flawed" or "inadequate." Lyondell Chem. Co. v. Ryan, 970 A.2d 235, 243-44 (Del. 209).  It is insufficient to make conclusory allegations that because illegal behavior occurred, internal controls must have been deficient, and the board must have known so.  See, e.g., Desimone v. Barrows, 924 A.2d 908, 940 (Del. Ch. 2007).  Additionally, allegations of even gross negligence will not suffice to state a claim of this nature.  In re Walt Disney Co. Deriv. Litig., 906 A.2d 27, 64-65 (Del. 2006).  The Amended Complaint must allege a conscious, sustained and systematic dereliction of duty rising to the level of bad faith.  See Stone, 911 A.2d at 369-70.  In other words, the Amended Complaint must allege facts establishing a decision that

is so unreasonable that it seems essentially inexplicable on any ground

other than bad faith.  Gothner, 546 B.R. at 330.

    The first prong of *Stone* — that the directors *utterly failed to*

*implement any reporting or information system or controls* — is defeated by

the Amended Complaint's own allegations, and thus cannot be

satisfied.  The Complaint is filled with examples of Board and Audit

Committee activity related to investigating, addressing and disclosing

the wrongdoing in China During Gothner's time on the Board,

including:

- replacing the Company's conflicted auditor;
- replacing the Company's conflicted CEO and CFO
- identifying and disclosing weaknesses in the Company's accounting practices and internal controls;
- disclosing that the Company had identified unreliable prior financial statements
- dispatching investigators to China, who prepared written and oral reports for the Board about evidence of the Two Books Issue and the Xiong Accounts Receivable Sale;
- hiring Protiviti to conduct audits and investigate the Two Books Issue and the Xiong Accounts Receivable Sale; and
- forming the Special Committee to investigate with the help of independent counsel and forensic accountants, and disclosing the investigation.

See MTD at ¶¶ 14, 17-24, 27, 29 (citing relevant paragraphs of the

Amended Complaint).  The Amended Complaint's allegations confirm

that reporting and control systems existed and were utilized.  The fact

that the systems did not function "to the plaintiffs' hindsight-driven

satisfaction" does not establish a bad faith claim.  In re Gen. Motors,

2015 WL 3958724, at *15.  Accordingly, the Amended Complaint has

failed to allege that "the directors utterly failed to implement any

reporting or information system or controls."

Additionally, the second prong of *Stone* – that having

implemented such a system or controls, the directors *consciously failed to*

*monitor or oversee its operations thus disabling themselves* from being

informed of risks or problems requiring their attention – is defeated by

the Amended Complaint's own allegations and cannot be satisfied.

The Trustee argues that it alleged the existence of "red flags"

from which "a reasonable inference can easily be drawn that Gothner

and the other directors consciously failed to monitor or oversee

[AgFeed's] operations thus disabling themselves from being informed

of risks or problems requiring their attention."  Opposition at 10.

However, in order to state a *Caremark* claim, the Trustee must allege

that the red flags were observed but "consciously disregarded" such

that Gothner completely "disable[d himself] from being informed of

risks or problems requiring [his] attention."  See In re Gen Motors, 2015

WL 3958724, at * 16; Stone, 911 A.2d at 370.  Here, the Amended

Complaint is again filled with discussion of how the Board acted in

response to the allegations of wrongdoing in China.  See MTD at ¶¶ 14,

17-24, 27, 29, 45 (citing relevant paragraphs of the Amended

Complaint).  The Amended Complaint does not identify how Gothner

completely disabled himself from being informed of risks or problems

requiring his attention.  Rather, the Amended Complaint focuses on

how and when the board responded to the "red flags."  A claim for bad

faith is not stated by second-guessing the Board's actions.  See, e.g.,

Lyondell, 970 A.2d at 243-44.  Accordingly, the Amended Complaint

fails to state a *Caremark* claim.

### (II) Breach of Fiduciary Duty (Duty of Loyalty)

Count II alleges that Gothner breached his fiduciary duty of

loyalty in three ways:  (a) by receiving and retaining compensation

under the Employment Agreement; and by causing AgFeed to enter

into transactions with (b) Minds Islands and (c) Walston DuPont.

*Applicable Law*

A board's power to act on the corporation's behalf is governed

by the directors' fiduciary relationship with the corporation and its

shareholders, which imparts upon the directors duties of care and

loyalty.  Shoen, 122 Nev. at 632 (citations omitted). The duty of loyalty

requires the board and its directors to maintain, in good faith, the

corporation's and its shareholders' best interests over anyone else's

interests.  Id., 122 Nev. at 632.  To state a legally sufficient claim for

breach of the duty of loyalty, plaintiffs must allege facts showing that a self-interested transaction occurred, and that the transaction was unfair to the company. <u>Fedders</u>, 405 B.R. at 540 (discussing breach of the duty of loyalty under Delaware law). However, under Nevada law, directors and officers may only be found personally liable for breaching their fiduciary duty of loyalty if that breach involves intentional misconduct, fraud, or a knowing violation of the law. <u>See</u> <u>Shoen</u>, 122 Nev. at 640.

  *(i) Employment Agreement*

  The Amended Complaint alleges that Gothner violated his duty of loyalty, and duty to avoid self-dealing, when he caused AgFeed to enter into the Employment Agreement. <u>See</u> Am. Compl. at ¶ 63. The Trustee argues that because Gothner breached his fiduciary duties, Gothner's "receipt of salary and benefits from the point of his elevation to de facto chief executive through the balance of his contract was tainted and amounted to self-dealing." <u>See</u> Am. Compl. at ¶ 263; Opposition at 13.

  A board's decisions relating to executive compensation are protected by the business judgement rule. <u>See, e.g.</u>, <u>Friedman v. Dolan</u>, 2015 WL 4040806, at * 5 (Del. Ch. June 30, 2015) (quoting <u>Brehm v. Eisner</u>, 746 A.2d 244, 263 (Del. 2000); <u>Fosbre v. Matthews</u>, 2010 WL

2696615 (quoting Brehm and applying Nevada law).  Thus, in order to rebut the business judgement rule the Trustee must allege facts showing that a majority of either the Board or the Compensation Committee—whichever approved Gothner's compensation—was not independent of Gothner or lacked good faith in making the award.  See In re Tyson Foods, Inc., 919 A.2d 563, 589 (Del. Ch. 2007).

Here, the Amended Complaint fails to allege who approved the Employment Agreement.  Absent this showing, the Trustee cannot rebut the business judgment rule.  See, e.g., Nelson v. Emerson, 2008 WL 1961150, at *9 (Del. Ch. May 6, 2008) (holding that a complaint fell "woefully short" of stating a claim for excessive compensation where it failed to state who approved the compensation); Wayne Cty. Emps.' Ret. Sys. V. Corti, 2009 WL 2219260, at *12 (Del. Ch. July 24, 2009 ("plaintiff has not alleged facts that rebut the presumption that the members of [the company's] compensation committee . . . exercised their independent and disinterested business judgment in approving the employment agreements"), aff'd, 996 A.2d 795 (Del. 2010).

Additionally, the Complaint does not allege that Gothner stood on both sides of the Employment Agreement's approval, therefore it provides no basis for a breach of loyalty claim.  See, e.g., Friedman v. Dolan, 2015 WL 4040806, at *9 ("[Defendants] did not award

18

themselves compensation, and there is no basis in the complaint to infer that either of the two engaged in behavior that coerced or influenced the Compensation Committee Defendants to act inconsistently with their responsibilities as directors. . . .  Thus, Plaintiff has not stated a claim . . . ."); In re Walt Disney Co. Deriv. Litig., 907 A.2d 693, 757 (Del. Ch. 2005) ("[Defendant] did not breach his fiduciary duty of loyalty by receiving the [employment termination] payment because he played no part in the decisions . . . ."), aff'd, 906 A.2d 27 (Del. 2006).

For these reasons, the Amended Complaint's claim relating to the Employment Agreement fails to state a claim.

*(ii) Minds Island Payments*

The Original Complaint alleged that payments made to Minds Islands amounted to a breach of the duty of loyalty.  These claims in the Original Complaint were dismissed because the Original Complaint did not allege: (i) the terms on which the Minds Island Payments were approved; (ii) that Gothner had any role in AFI's decision to retain Minds Island; (iii) a knowing or intentional violation of the law; and (iv) that Gothner stood on both sides of the transaction.  Gothner, 546 B.R. at 331.  The Amended Complaint does not add any facts that would serve to cure the shortcomings of the Original Complaint.

The Amended Complaint fails to allege facts regarding who approved the payments to Minds Island, on what terms or process the payments were approved, or that Gothner had any role in AgFeed's decision to retain Minds Island to provide web design services.  The Amended Complaint also fails to allege that Gothner stood on both sides of the transaction.  The conclusory statement that Gothner's wife "controlled" Minds Island is insufficient to show that Gothner stood on both sides of the transaction.  See Zoren v. Genesis Energy, L.P., 836 A.2d 521, 528 (Del. Ch. 2003) (dismissing a self-dealing claim making only conclusory allegations that defendants were interested in the transaction); In re Sea-Land Corp. S'holders Litig., 1987 WL, at *4-5 (Del. Ch. May 22, 1987) (holding that conclusory allegations were insufficient to plead control).  As a result, the Court concludes that the Amended Complaint fails to allege sufficient facts regarding the payments to Minds Island to support a cause of action for breach of the duty of loyalty.

*(iii) Payments Made by Walston DuPont*

The Court dismissed the Original Complaint's claims that the Walston DuPont Loans amounted to a breach of the duty of loyalty. Gothner, 546 B.R. at 331.  The Amended Complaint does not add any

facts that would serve to cure the shortcomings of the Original Complaint.

The Amended Complaint fails to allege that either AgFeed or Gothner, in his capacity as a fiduciary to AgFeed, were involved in the transaction. The Amended Complaint fails to allege facts regarding who approved the transfers, on what terms or process the transfers were approved, or that Gothner or AgFeed had any role in Walton DuPont's decision to make these transfers. Most significantly, the Amended Complaint fails to allege that Gothner (or AgFeed) stood on both sides of the transaction.

As a result, the Court concludes that the Amended Complaint fails to allege sufficient facts regarding the Walston DuPont Loans to support a cause of action for breach of the duty of loyalty.

### (III) Fraudulent Transfer (11 U.S.C. §548) – Salary and Benefits

Count Three alleges that Gothner received a total of $772,000 in salary and additional health benefits under the Employment Agreement between January 1, 2012, and July 15, 2013. See Am. Compl. at ¶ 270. Count Three further alleges that the transfers were made without fair consideration and that the Debtor was functionally insolvent at the time of each transfer. See Am. Compl. at ¶ 276.

The Court previously dismissed this count (former Count VIII of the Original Complaint) because the Original Complaint failed to allege "specific facts relating to the date of any of the transfers, the amount of any of the transfer, or the transferor of any of the transfers."  Gothner, 546 B.R. at 336.  The only new facts alleged in the Amended Complaint are:  (i) the aggregate amount of the Alleged Employment Transfers over a 19 month period; and (ii) the assertion "[o]n information and belief" that Gothner was paid "periodically on a monthly or bi-weekly basis."  See Am. Compl. at ¶¶ 270, 275.  Allegations that the Debtors "made a number of payments" under a contract are insufficient to support a constructive fraud claim.  See Gothner, 546 B.R. at 336 (quoting Pardo v. Found. Health Corp. (In re APF Co.), 2004 WL 1969580, at *1 (Bankr. D. Del. Jan. 21, 2004).

Additionally, the Amended Complaint contains only conclusory allegations that the Alleged Employment Transfers were not for reasonably equivalent value.  See Am. Compl. at ¶¶ 273-74.  The Complaint does not allege that Gothner received any compensation that he was not owed under the Employment Agreement.  The Trustee argues that the Amended Complaint's allegations that Gothner's salary was twice that of AgFeed's previous CEO are sufficient to overcome the Motion to Dismiss.  See Am. Compl. at ¶¶ 206, 234.  Allegations

showing that payments are "excessive or extraordinary . . ., i.e., outside the normal rate," may be sufficient to overcome a motion to dismiss. However, conclusory allegations are insufficient.  <u>See, e.g.</u>, <u>Burtch v. Huston (In re USDigital, Inc.)</u>, 443 B.R. 22, 39-40 (Bankr. D. Del. 2011) (dismissing constructive fraud claim where plaintiff failed to provide any factual allegations supporting the assertion that defendant did not receive reasonably equivalent value).  Here, the Amended Complaint makes no allegations, other than conclusory ones, as to why these payments are in fact excessive.  The Amended Complaint does not describe how or why Gothner's salary was excessive.  The Amended Complaint does not allege that Gothner and the prior CEO or the circumstances of their hiring were comparable, or even that they had the same "employment responsibilities."  Rather, the Trustee in conclusory fashion argues that simply because Gothner made twice as much as the previous CEO, the payments must be excessive.  The Amended Complaint's conclusory allegations are insufficient to survive a motion to dismiss.

(IV) Fraudulent Transfer (11 U.S.C. §548) – Minds Island Payments

*Actual Fraud*

The Court dismissed the Original Complaint's claims that the Minds Island Payments constituted actually fraudulent (Count IX) transfers for two reasons.  First, the Original Complaint did not identify who made the alleged transfers, alleging only that the transfers were made by "[AFI] and related entities or by entities with a business relationship to [AFI]."  Gothner, 546 B.R. at 337.  Second, the Original Complaint did not allege the facts and circumstances of the alleged fraud, and rather simply recited the language of the statutes.  Id.

The Amended Complaint fails for these same reasons.  The Amended Complaint alleges no additional facts to cure the defects of the Original Complaint.  See Am. Compl. at ¶ 278 (alleging the Minds Island Payments were made by "[AFI] and related entities or by entities with a business relationship to [AFI]; id. at ¶¶ 281-82 (conclusory allegations of the language of the statute); id. at Ex. A (listing "[AFI] or Affiliate" as the transferor of every one of the Minds Island Payments).  Accordingly, the Amended Complaint fails to allege facts sufficient to support a claim for actual fraud.

*Constructive Fraud*

Count IV of the Amended Complaint (Count IX of the Original Complaint) alleges that the Minds Island Payments are constructively fraudulent transfers under 11 U.S.C. § 548. The Court previously denied Gothner's motion to dismiss with regard to this claim. For the same reasons as stated by the Court in its prior ruling, Gothner's motion to dismiss the constructive fraud claims of Count IV is denied. See Gothner, 546 B.R. at 336-37.

### (V) Constructively Fraudulent Transfer (11 U.S.C. §544 and Applicable State Law)

Count V of the Amended Complaint (Count X of the Original Complaint) alleges that numerous transfers are constructively fraudulent transfers under applicable state law. The Court previously denied Gothner's motion to dismiss with regard to this claim. For the same reasons as stated by the Court in its prior ruling, Gothner's motion to dismiss the constructive fraud claims of Count V is denied. See Gothner, 546 B.R. at 336, 339.

### (VI) and (VII) Recovery and Disallowance

Because Counts IV and V are not being dismissed in their entirety, Counts VI and VII do not fail to state a claim upon which relief may be granted.

(VIII) Recoupment

The Amended Complaint alleges that the Trustee is able to "recoup the damages awarded to the Trustee under Counts I through VI against any amounts owed to Gothner under his Employment Agreement."  See Am. Compl. at ¶ 306.

"The doctrine of recoupment is an equitable remedy that allows the offset of mutual debts when the respective obligations originate from the same transaction or occurrence."  In re Commc'n Dynamics, Inc., 300 B.R. 220, 225 (Bankr. D. Del. 2003).  However, recoupment is a defense, not a cause of action.  DB Structured Prods., Inc. v. Am. Home Mortg. Holdings, Inc. (In re Am. Home Mortg. Holdings, Inc.), 402 B.R. 87, 94 (Bankr. D. Del 2009) ("[R]ecoupment is considered a 'defense' rather than a 'claim,' because it permits a creditor to assert that mutual claims under the same transaction with the debtor extinguish one another, but it does not permit the creditor to obtain affirmative recovery from the debtor.").  Thus, it is improper for the Trustee to allege recoupment as a cause of action.  For these reasons, the Court concludes that the Amended Complaint has failed to state a claim under Count VIII.

26

<u>(IX) Setoff – 11 U.S.C. § 558</u>

The Amended Complaint alleges that the "[u]nder both Nevada and Massachusetts state law, the Trustee may setoff any amounts owed to Gothner under his Employment Agreement against the damages awarded to the Trustee on Counts I through V."  <u>See</u> Am. Compl. at ¶ 314.  Section 558 provides "that the estate shall have the benefit of *any defense* available to the debtor," including the right to setoff.  <u>See</u> 5 COLLIER ON BANKRUPTCY, ¶ 558, at 558.01[1][a] (Alan N. Resnick & Henry J. Sommer eds. 16th ed. 2009).  Because setoff is a defense available to the debtor—rather than a cause of action—it is improper for the Trustee to allege setoff in the Amended Complaint.  For these reasons, the Court concludes that the Amended Complaint has failed to state a claim under Count IX.[6]

<u>(X) Intentional Misrepresentation by Nondisclosure</u>

Count X alleges that Gothner engaged in intentional misrepresentation by nondisclosure.  <u>See</u> Am. Compl. at ¶ 78.  The theory of Count X is that on August 2 and 9, 2011, Gothner disseminated false or materially misleading information intended to

---

[6] In the Motion to Dismiss, Gothner argues that the Trustee has waived its setoff and recoupment defenses because they were not included in the Trustee's previous claim objection to Gothner's Employment Claim.  In its Opposition to the Motion, the Trustee disputes that they have waived these defenses and argues they are preserved in its objections to Gothner's Employment Claim.  The Court does not need to determine whether these defenses have been waived.

"induce investors to purchase shares of the Company or refrain from selling such shares." See Am. Compl. at ¶ 317-19.

The Trustee is bringing Count X under the theory of common law fraud. Fraud claims are personal claims that belong to affected stockholders, not the Company. See FS Parallel Fund L.P. v. Ergen, 2004 WL 3048751, at *3 (Del. Ch. 3, 2004) ("a [stockholder's] fraud claim [against directors] is inherently direct"), aff'd, 879 A.2d 602 (Del. 2005). As such the claims are not estate property, and therefore the Trustee lacks standing to bring them. See Trenwick Am. Litig. Trust v. Ernst & Young L.L.P., 906 A.2d 168, 191 (Del. Ch. 2006) (holding that a liquidating trustee lacks standing to bring fraud claims belonging to the debtors' creditors), aff'd sub nom., Trenwick Am. Litig. Trust v. Billett, 932 A.2d 438 (Del. 2007). Thus, Count X must be dismissed.

Even assuming that the Trustee has standing, the Amended Complaint fails to allege facts sufficient to support a common law claim of fraud. Fraud requires: (1) a false representation of material fact; (2) the knowledge or belief that the representation was false, or made with reckless indifference for the truth; (3) the intent to induce another party to act or refrain from acting; (4) the action or inaction taken was in justifiable reliance on the representation; and (5) damage to the other part as a result of the representation. See, e.g., Hauspie v. Stonington

P'rs, Inc., 945 A.2d 584, 586 (Del. 2008).[7]  Fraud must be pled with

particularity.  See, e.g., Gothner, 546 R.R. at 328 (citing FED. R. CIV. P.

9(b) and case law applying this standard).

    The Amended Complaint fails to allege with particularity that

the Company's alleged defrauded stockholders justifiably relied on the

allegedly false statements attributed to Gothner.  The Trustee relies on a

single conclusory allegation of reliance by the Company's stockholders.

See Opposition at 19 ("because these were statements of a publicly held

company, shareholders justifiably relied on such statements") (quoting

Am. Compl. at ¶ 319).  These types of conclusory allegations are

insufficient to establish justifiable reliance.  See Smith v. Smitty

McGee's, Inc., 2998 Wl 246681, 15 *5 (Del. Ch. May 8, 1998) ("This

conclusory statement [that plaintiff 'relied upon' a statement] is

insufficient; to plead reliance with particularity, plaintiff must explain

what he did or refrained from doing, in justifiable reliance upon the

statement.").  The Trustee also argues that the justifiable reliance

element is satisfied based on the "fraud on the market" theory available

---

[7] Nevada, Massachusetts and Tennessee all require the same elements of fraud as Delaware. See Hodge v. Craig, 382 S.W.3d 325, 342 (Tenn. 2012); Barmettler v. Reno Air, Inc., 956 P.2d 1382, 1386 (Nev. 1998); Slaney v. Westwood Auto, Inc., 322 N.E.2d 768, 779 (Mass. 1975). Thus, there is no need for the Court to engage in a choice of law analysis.  See In re Syntax-Brillian Corp., 573 F. App'x 154, 163 (3d Cir. 2014) ("[B]ecause the laws are sufficiently similar [in] that they result in the same outcome here, a choice of law analysis is unnecessary.").

for some securities fraud claims under federal securities law.

Opposition at 19-20 (citing <u>Halliburton</u>).  This argument is misplaced,

as the "fraud on the market" theory is unavailable under state law.  <u>See</u>

<u>NACCO Indus., Inc. v. Applica Inc.</u>, 997 A.2d 1, 29 (Del. Ch. 2009)

("Our Supreme Court has declined to permit the fraud-on-the-market

theory to be used as a substitute [for showing reliance]"); <u>Nevada</u>

<u>Power Co. v. Monsanto Co.</u>, 891 F. Supp. 1406, 1414 (D. Nev. 1995).  The

Amended Complaint contains no particularized allegations that any

stockholder relied or that such reliance proximately caused him or her

any damages.  The Amended Complaint, therefore, fails to state a claim

for common law fraud.

<u>Gothner's Employment Claim</u>

Gothner requests that the Court allow and direct the Trustee to

pay the balance of the Employment Claim.

On February 10, 2016, the Court entered an order allowing part

of Gothner's Employment Claim, reducing it, in part, and preserving

"[a]ll other issues raised in the Claim Objection (and responses thereto)

and the remaining portions of the claim . . . until adjudication of the []

Trustee's complaint filed against Gothner in Adversary Proceeding No.

15-50210 (BLS) [D.I. 1]."  D.I. 1812.  On February 19, 2016, the Court

dismissed, without prejudice, the majority of the counts in the Original

Complaint.  See Gothner, 546 B.R. 318.  On March 9, 2016, Gothner filed

a motion seeking allowance and payment of the Employment Claim

(the "Motion for Allowance"), which the Court granted on April 20,

2016.  D.I. 1821, 1835.  On April 25, 2016, the Trustee filed a motion

seeking reconsideration of the Court's order granting the Motion for

Allowance.  D.I. 1837.  On June 25, 2016, the Court granted the Trustee's

motion for reconsideration and vacated the order granting the Motion

for Allowance.  D.I. 1851.  In the order granting reconsideration, the

Court required that the Trustee escrow in an interest bearing account

the full amount of the Employment Claim (Claim No. 278, as reduced

by D.I. 1812), in the amount of $797,631.20 plus post-petition interest at

the federal judgment rate as of the Petition Date.

　　　Here, the only counts surviving the Motion are the

constructively fraudulent transfer claims (Counts IV and V) and the

corresponding claims under Sections 550 and 502(d) (Counts VI and

VIII).  Any potential setoff defense that the Trustee may raise is capped

at $294,000.[8]  See Am. Compl. at ¶ 278 (alleging Gothner's potential

liability under Count IV is $32,000);  See Am. Compl. at ¶ 284 (alleging

Gothner's potential liability under Count V is $261,000).  Accordingly,

---

[8] As previously discussed, Gothner argues that the Trustee has waived any setoff defense.  This matter is not before the Court today.  Thus, the Court does not need to determine whether any defenses have been waived.

the Court will direct payment of a portion of the Employment Claim in the amount of $503,631.20.  The Court will also require that the Trustee continue to hold in escrow the remaining $294,000 (plus interest) in an interest bearing account.

## V.  CONCLUSION

For the foregoing reasons, the Motion is granted with respect to Counts I, II, III, VIII, IX and X in their entirety, and the Motion is granted with respect to Count IV's claims for actual fraud.    The Court grants these dismissals with prejudice given that leave to re-plead has previously been afforded; in addition, the Court has previously expressed and now reiterates its profound concerns with respect to the dissipation of monies otherwise available for distribution to stakeholders being burned up in litigation of dubious merit and questionable collectability.  The Motion is denied with regards to the remainder of Count IV, and the entirety of Counts V, VI, and VII.

**BY THE COURT**:

Dated:  September 13, 2016
Wilmington, Delaware

_____
Brendan Linehan Shannon
Chief United States Bankruptcy Judge